Bell vs. Thomas.

## BELL vs. THOMAS.

*September 30 — October 14, 1884.*

*(1) Contract construed: Sale of minutes of land.   (2) Amendment of pleading.*

1. B. furnished to T. minutes of certain public lands under an agreement that the latter should pay at the rate of fifty cents per acre for such part of said minutes as were of lands that he "could handle and dispose of." T. afterwards sold minutes of said lands to a third person who entered the lands. In an action by B. against T. for the agreed price, the latter testified that the minutes sold by him were not those furnished by B. but had been procured from other persons prior to making the agreement with B. *Held,* that whether T. used the minutes furnished by B. or not, the condition of payment was fulfilled when he purchased or caused to be purchased the lands described therein.

2. Before the trial the court refused to permit an erroneous description of land in the complaint to be amended unless the cause should be continued, and the motion to amend was withdrawn. Evidence introduced on the trial *without objection* showed the true location of the land. *Held,* that an application, after the evidence was all in, to amend the complaint so as to conform to the facts proved, should have been granted. Sec. 2830, R. S.

APPEAL from the Circuit Court for *Ashland* County.

Action to recover the sum of $360, alleged to be due to the plaintiff for minutes of land furnished to the defendant under the following written contract, which was dated January 7, 1882, and was signed by the parties:

"I have this day agreed to give to *Geo. W. Bell* the sum of fifty cents per acre for the minutes of sundry parcels of state lands, amounting to thirty-five (35) forties, and also the same for the government lands, the minutes of which he has, that I can handle and dispose of, the amount of which is indefinite. The pine on the thirty-five (35) forties of state lands is estimated to cut six million one hundred and twenty-five thousand (6,125,000) feet, board measure, and to run

fifteen per cent. to uppers. All land not yielding as much pine as estimated to be made good by said *Geo. W. Bell.*"

At the trial the plaintiff explained that the term "minutes," as applied to lands, included the description of the land, the amount and quality of the pine found on each forty acres, the number of thousand feet of timber found, the quality of timber, how many saw-logs there are in a tree, how many logs it will take to make a thousand feet of lumber, the nature of the soil whether rough or smooth, and the nearness of the land to a stream for driving logs.

The defendant's answer and the other evidence given at the trial will sufficiently appear from the opinion. The plaintiff appealed from a judgment of nonsuit.

For the appellant there were briefs by *Knight & Hayes,* and oral argument by *Mr. J. O. Hayes.*

For the respondent there was a brief by *Rogers & Mann,* and oral argument by *Mr. Mann.*

ORTON, J. The complaint alleges a written contract between the parties by which the plaintiff was to furnish the defendant minutes of certain lands of the state and of the general government subject to purchase, and in consideration thereof the defendant was to pay him at the rate of fifty cents per acre for such part of said minutes as were of lands that the defendant "could handle and dispose of." And it further alleges that thereafter the defendant sold said minutes of certain tracts of government lands for a valuable consideration to one McLaughlin, and that he (McLaughlin) entered the same to the amount of 720 acres. The answer admitted substantially the contract as alleged. The above language, "could handle and dispose of," is in the written agreement introduced in evidence by the plaintiff.

The plaintiff sustained his complaint by evidence. The defendant insisted upon the trial that the proper construction of the contract is that he was not to be liable to pay

the plaintiff for any minutes which were of no use to him, and that he had procured minutes of the same land before that time from others, and made use of them only, and introduced evidence to sustain such defense. The circuit court took the same view of the contract, and granted a nonsuit at the end of the trial. This was clearly erroneous.

The minutes were the property of the plaintiff, and the defendant bought them as such property. They had been made by the labor and skill of the plaintiff, and they had value in market. He might have sold them to others had he not sold them to the defendant. The fact that the defendant had minutes of the same lands, made by others, did not by any means render the plaintiff's minutes valueless. They might have been fuller or more reliable. At all events, by his obtaining them he prevented the plaintiff from disposing of them to others. But whatever their value, or the reasons of the defendant for purchasing them, he bought them, and that is enough. The condition of payment was fulfilled when the defendant purchased, or caused to be purchased, the lands described in them. The defendant sold them to the person who entered the lands they described. Any other construction would be trifling with the plaintiff's rights of property and render the contract futile. To so construe it that the defendant could lay the minutes aside or destroy them or not use them, and then enter the same lands on minutes made by others or on his own inspection, and by so doing avoid liability to pay for them, would deprive the plaintiff of his property without any compensation whatever. He had other minutes, and, if he did not want these, why did he buy them? By so doing he might have prevented their use by others. The contract is plain enough with a reasonable construction.

The key-note of the error of the circuit court is found in one sentence of the reasons given for the nonsuit: "I think it absolutely indispensable that you should set out in your

complaint, and prove, not that this land was entered, but that *these minutes were used*, by the defendant."

Before entering upon the trial, the plaintiff's counsel asked leave to amend the complaint by changing the number of the section of some of the lands entered from 11 to 14, to correct a mere clerical error. The defendant made affidavit of surprise, and asked a continuance of the case. The court decided to grant the continuance, and to save the trial at that time such motion to amend was withdrawn. After the evidence was all in, and it had been shown that said lands were in section 14, and not in section 11, the plaintiff's attorney again asked leave to so amend the complaint, and it was refused. Such refusal was not an abuse of discretion, but a violation of the statute. Sec. 2830, R. S. The complaint should be so amended.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.